IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Case No. 23-cv-02068-PAB-MDB
(Consolidated with Civil Case No. 23-cv-02413-PAB-MDB)

_____

Civil Case No. 23-cv-02068-PAB-MDB

PATRICIA HERNANDEZ,

        Plaintiff,

v.

PUEBLO COUNTY,

        Defendant.

_____

Civil Case No. 23-cv-02413-PAB-MDB

PATRICIA HERNANDEZ,

        Plaintiff,

v.

AFSCME COUNCIL 18, and
AFSCME LOCAL 1335,

        Defendants.


_____

### ORDER
_____

        This matter comes before the Court on the Recommendation of the United States

Magistrate Judge [Docket No. 105].  Plaintiff Patricia Hernandez filed an objection.

Docket No. 107.  Defendant the County of Pueblo filed a response.  Docket No. 108.

## I.    BACKGROUND

On May 6, 2025, plaintiff filed her amended complaint against defendants the County of Pueblo ("the County") and AFSCME Council 18 and AFSCME Local 1335 (the "Union Defendants").  Docket No. 80.  Plaintiff's claims arise out of her employment with the County.  *See id.* at 5.  The magistrate judge construes plaintiff as bringing three claims (1): disability discrimination by the County pursuant to the American with Disabilities Act (the "ADA"); (2) retaliation by the County pursuant to the ADA; and (3) breach of duty of fair representation by the Union Defendants.  *See* Docket No. 105 at 6.  The County moves for summary judgment on claims one and two.  *See* Docket No. 53.  The Union Defendants move for summary judgment on claim three.  *See* Docket No. 55 at 2.  The magistrate judge recommends granting defendants' motions for summary judgment and closing this case.  Docket No. 105 at 17.

## II.    UNDISPUTED FACTS

The undisputed facts of this case are set forth in the magistrate judge's recommendation.  Docket No. 105 at 2-5.  No party has objected to the recommendation's identification of these facts as being undisputed.  The Court adopts the undisputed facts in the recommendation for purposes of ruling on plaintiff's objection.  The Court will, however, only discuss the undisputed facts that are relevant to resolving plaintiff's objection.

Plaintiff was employed by the County as a Department of Human Services ("DHS") Technician until her resignation in January 2019.  Docket No. 53 at 2, ¶ 1; *see also* Docket No. 53-1 at 1.  During her employment, plaintiff suffered from severe, episodic anxiety that required her to miss work in 2017 and 2018.  Docket No. 69 at 7-8,

¶¶ 7-14; Docket No. 96 at 9, ¶¶ 12-17.  After her resignation, plaintiff filed a federal
lawsuit on May 29, 2019, alleging that the County discriminated against her on the basis
of her disability.  Docket No. 53 at 2, ¶ 2; *see also Hernandez v. Pueblo County, DHS*,
Case No. 19-cv-01533-MDB (D. Colo. May 29, 2019), Docket No. 1.  Magistrate Judge
Kathleen Tafoya granted the County's motion for summary judgment, finding that
plaintiff failed to establish a prima facie case of discrimination.  Docket No. 53 at 2, ¶ 3.

The Union Defendants and Pueblo County have entered into a collective
bargaining agreement ("CBA").  Docket No. 55-1 at 1, ¶ 5.  The CBA includes a
discretionary employment reinstatement process for certain qualifying individuals.  *Id*. at
2, ¶ 7.

On October 5, 2022, plaintiff requested that she be reinstated to her position with
the County.  *Id*. at 1, ¶ 2.  On October 22, 2022, the County denied the request because
the previous County DHS director deemed plaintiff ineligible for reinstatement.  *Id.*, ¶¶ 3-
4.  Plaintiff contacted Josette Jaramillo, then-President of AFSCME Local 1335, to seek
representation for her reinstatement efforts.  *Id*. at 2, ¶ 9.  Ms. Jaramillo told plaintiff that
Local 1335 would not represent plaintiff because she was no longer a bargaining unit
member covered by the CBA.  *Id*, ¶ 10.

In June 2023, plaintiff applied to work at the County DHS as a Legal Technician
in the Child Support Enforcement Unit.  Docket No. 53 at 3, ¶¶ 4-5.  Plaintiff was
selected to interview for the position.  *Id.*, ¶ 8.  Plaintiff did not disclose that she had a
disability or that she considered herself disabled during the interview.  *Id.*, ¶ 9.  The
interview panel was not aware that plaintiff complained of discrimination while
previously employed by the County.  *Id*. at 4, ¶ 11.  Shortly after the interview, the DHS

director placed hiring for the Legal Technician Position on hold.  Docket No. 69 at 15,

¶ 63.  After the hold was lifted, the County hired Andrea Brown for the position.  Docket

No. 53 at 4, ¶ 13.  Ms. Brown had a valid Paralegal's Certification, which was a

preferred qualification, while plaintiff did not have such a certification at the time that she

applied.  *Id.* at 4, ¶¶ 14, 16.  Ms. Brown had 25 years of experience as a paralegal,

including in the area of family law.  *Id.*, ¶ 15.  At the time plaintiff applied, she had been

working for several years at H&R Block, outside the field of child custody and

enforcement work.  *Id.*, ¶ 17.

## III.   LEGAL STANDARDS

### A.  Objections to the Magistrate Judge Recommendations

The Court must "determine de novo any part of the magistrate judge's disposition

that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  An objection is "proper" if

it is both timely and specific.  *United States v. One Parcel of Real Prop. Known as 2121

E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996) ("*One Parcel*").  A specific objection

"enables the district judge to focus attention on those issues – factual and legal – that

are at the heart of the parties' dispute."  *Id*.

In the absence of an objection, the district court may review a magistrate judge's

recommendation under any standard it deems appropriate.  *See Summers v. Utah*, 927

F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It

does not appear that Congress intended to require district court review of a magistrate's

factual or legal conclusions, under a *de novo* or any other standard, when neither party

objects to those findings.").  The Court therefore reviews the non-objected to portions of

a recommendation to confirm there is "no clear error on the face of the record."  Fed. R.

4

Civ. P. 72(b), Advisory Committee Notes. This standard of review is something less

than a "clearly erroneous" or "contrary to law" standard of review, Fed. R. Civ. P. 72(a),

which in turn is less than a de novo review. Fed. R. Civ. P. 72(b). Because plaintiff is

proceeding pro se, the Court will construe her objection and pleadings liberally without

serving as her advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

### B. Motion for Summary Judgment

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when

the "movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if,

under the relevant substantive law, it is essential to proper disposition of the claim.

*Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes

over material facts can create a genuine issue for trial and preclude summary judgment.

*Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is

"genuine" if the evidence is such that it might lead a reasonable jury to return a verdict

for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). A

movant who bears the burden at trial must submit evidence to establish the essential

elements of its claim. *Harper v. Mancos Sch. Dist. RE-6*, 837 F. Supp. 2d 1211, 1217

(D. Colo. 2011).

Where "the moving party does not bear the ultimate burden of persuasion at trial,

it may satisfy its burden at the summary judgment stage by identifying a lack of

evidence for the nonmovant on an essential element of the nonmovant's claim."

*Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations

omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman*, 252 F.3d at 1115.  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*

## IV.    ANALYSIS

The Court construes plaintiff's filing as making six objections.  The Court will address each in turn.

### A.  <u>Plaintiff's First Objection</u>

Plaintiff's first objection involves her first claim, which alleges disability discrimination.  *See* Docket No. 107 at 2-3.  The magistrate judge recommends that summary judgment be entered for the County on this claim because plaintiff fails to show causation.  *See* Docket No. 105 at 12.  Specifically, the recommendation finds that plaintiff fails to "adduce[] evidence that she was treated adversely because of her alleged disability" when the County deemed plaintiff ineligible for reinstatement in 2019, denied her request for reinstatement with the County in 2022, or refused to hire plaintiff in 2023.  *Id.* at 10-11.

Plaintiff objects to the recommendation on two grounds.  First, plaintiff argues that the recommendation "erred in concluding there is no evidence that the County's decisions not to reinstate or hire Plaintiff was connected to her disability."  Docket No. 107 at 2.  Plaintiff does not object to the recommendation's findings of undisputed facts or the characterization of her claims.  *See id*. at 2-3.  She also does not object to the recommendation's finding that there is no evidence showing that the DHS director knew of her disability when plaintiff was deemed ineligible for reinstatement in 2019 or that there is no evidence that the interview panel knew of her disability when it considered plaintiff for employment in 2023.  *See id.*

Second, plaintiff argues that there is evidence that purportedly raises an inference of discrimination, namely, comments from her supervisor in 2018 that she was "lowering [plaintiff's] production" because of plaintiff's "special situation" and a December 7, 2018 letter from the DHS Director at the time that "falsely claim[ed] [plaintiff] was only meeting 50% of production goals and threatening medical termination unless she submitted further medical records."  *See id.*; *see also* Docket No. 69 at 10-11, ¶¶ 33, 37.

"Title II of the ADA states, 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016) (quoting 42 U.S.C. § 12132).  When a plaintiff does not present direct evidence of discrimination, a court looks to the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to evaluate disability discrimination claims arising

7

under the ADA.  To survive summary judgment on a disability discrimination claim, a plaintiff must raise a genuine issue of disputed fact for each element of a prima facie case.  *Herrmann v. Salt Lake City Corp.*, 21 F.4th 666, 678 (10th Cir. 2021).  A prima facie case of discrimination has three elements: (1) she was a disabled person as defined by the ADA; (2) she was qualified, with or without reasonable accommodation, to perform the essential functions of his job; and (3) she was discriminated against because of her disability.  *Id.* (quoting *Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 883 (10th Cir. 2015)); *see also McGeshick v. Principi*, 357 F.3d 1146, 1150 (10th Cir. 2004).  If a plaintiff demonstrates a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action.  *See Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 308-09 (2025). The plaintiff then has the opportunity to show that the reason provided by the employer was pretext for discrimination.  *See id.*

Plaintiff argues that the recommendation erred in finding a lack of a causal connection between the County's conduct and plaintiff's disability.  *See* Docket No.107 at 2-3.  However, even assuming that plaintiff's assertions of fact regarding 2018 had evidentiary support and were undisputed, the Court agrees with the magistrate judge's finding that plaintiff fails to raise a genuine issue of material fact regarding the third element of her disability discrimination claim, namely, that she was discriminated against on the basis of her disability.  Plaintiff's objection fails to point to evidence that shows she can satisfy her burden as to the third element.  It is true that the December 7, 2018 letter shows that the DHS Director who deemed plaintiff ineligible for reinstatement in 2019 knew of plaintiff's disability.  *See* Docket No. 69-5 at 8.  However,

mere knowledge of disability, without more, is insufficient to support an inference of discrimination. *Doucett v. D.R. Horton, Inc.,* 2010 WL 816844, at *15 (D.N.M. Feb. 16, 2010) ("if demonstrating mere knowledge on the part of an employer of protected activity or protected status were sufficient to make a plaintiff's *prima facie* case, a plaintiff's burden at this stage would be almost nonexistent"). Additionally, the fact that the DHS Director in 2019 knew that plaintiff had a disability does not impute that knowledge to the County when it denied plaintiff's reinstatement request in 2022. Plaintiff points to no evidence that raises a genuine issue of material fact in that regard.

Plaintiff's second argument is that her supervisor's comments in 2018[1] establish an inference of discrimination. *See* Docket No. 107 at 2-3. The Court finds that the fact that plaintiff's supervisor, in 2018, made comments that purportedly concerned plaintiff's disability does not impute knowledge to the DHS Director in 2019 or the County in 2022. Moreover, plaintiff does not argue that her supervisor's comments played any role in the reinstatement decisions or point to any evidence in support of that theory. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) ("Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus."); *Angell v. Fairmount Fire Prot. Dist.*, 907 F. Supp. 2d 1242, 1257 (D. Colo. 2012), *aff'd*, 550 F. App'x 596 (10th Cir. 2013) ("ambiguous comments [that] do not reveal any sort

---

[1] Plaintiff does not attach the audio recording of her supervisor's 2018 comments in response to the County's motion for summary judgment. *See* Docket No. 69 at 10-11, ¶ 33. However, plaintiff does attach the audio recording in response to the Union Defendants' motion for summary judgment. *See* Docket No. 96 at 13, ¶ 44 (citing Docket No. 97). The audio recording does not contain the statements that plaintiff quotes in her response. *See id.*

of animus" "fall well short of demonstrating that there was a causal connection between [plaintiff's ADA] claim and his termination").[2]

Regarding that portion of plaintiff's discrimination claim that the County failed to hire her as a Legal Technician in 2023 due to her disability, plaintiff points to no evidence that raises a genuine dispute regarding the 2023 interview panel's ignorance of her disability. Her supervisor's 2018 comments and the DHS Director's December 7, 2018 letter do not overcome the undisputed fact that the interview panel in 2023 did not know that plaintiff was disabled.[3]

Therefore, plaintiff fails to meet her prima facie burden. Because plaintiff fails to raise a genuine issue of material fact that the County's 2019 and 2022 reinstatement decisions or the decision to not hire her in 2023 were because of her disability, the

---

[2] Plaintiff makes a related objection that the magistrate judge should have found that plaintiff's evidence (the 2018 comments from her supervisor, the "false 50% letter" from December 7, 2018, and the "July 31, 2023 interview" wherein the hiring panel stated three positions were available) constitute "objective evidence, not speculation." *See* Docket No. 107 at 5. As discussed above, the Court finds that the supervisor's comments and the letter regarding plaintiff's "production" fail to raise an inference that the County refused to reinstate plaintiff in 2022 or hire plaintiff in 2023 because of her disability. As for the July 31, 2023 interview, plaintiff fails to explain why the fact that there were three positions available means that the County's failure to hire her was because of plaintiff's disability. Therefore, the Court will overrule this objection.

[3] The fact that the 2023 interview panel did not know of plaintiff's disability was not included in the recommendation's statement of undisputed facts. *See* Docket No. 105 at 2-5. However, the Court finds that this fact is undisputed. In its motion for summary judgment, the County asserts as an undisputed fact that, "[d]uring the interview process, Ms. Hernandez did not disclose that she had a disability, either currently or when employed previously with the County." Docket No. 53 at 3, ¶ 9. In response to this assertion, plaintiff states that she "[d]isagrees with the statement of fact. Ms. Hernandez was interviewing for an external Legal Technician position. Ms. Hernandez was not applying for a reasonable accommodation." Docket No. 69 at 4, ¶ 9. This is not responsive to the County's assertion of fact and plaintiff cites no evidence in support of her purported denial. Therefore, the Court deems it to be admitted that the 2023 interview panel did not know that plaintiff had a disability.

Court will overrule plaintiff's first objection and grant summary judgment for the County on claim one.

### B. **Plaintiff's Second Objection**

Plaintiff's second objection is to the recommendation's finding on her second claim for retaliation pursuant to the ADA. *See* Docket No. 107 at 3-4. The magistrate judge recommends that summary judgment be entered for the County on plaintiff's second claim. *See* Docket No. 105 at 12. The recommendation identifies the plaintiff's protected conduct to be her filing of a federal discrimination lawsuit in 2019 and the adverse actions by the County to be the 2019 and 2022 reinstatement decisions and 2023 hiring decision. *See id.* at 13. The undisputed facts do not demonstrate any other instances of plaintiff's protected conduct or the County's adverse actions. *See id.* at 2-5. As discussed previously, plaintiff does not object to the magistrate judge's findings of undisputed facts. *See* Docket No. 107.

The recommendation finds that plaintiff fails to meet her prima facie burden on her retaliation claim because the "record is devoid of any evidence tending to support a causal connection" between plaintiff's 2019 lawsuit and the County's refusal to reinstate or hire plaintiff. *See* Docket No. 105 at 13. The magistrate judge finds that two interview panelists who considered plaintiff for employment in 2023 "swore under oath that they were unaware Plaintiff ever filed a lawsuit or made internal complaints against the County" and plaintiff fails to raise a genuine issue of material fact disputing this. *Id.*[4]

---

[4] The fact that the 2023 interview panel did not know of plaintiff's 2019 lawsuit was not included in the recommendation's statement of undisputed facts. *See* Docket No. 105 at 2-5. However, the Court finds that this fact is undisputed. The County asserts as an undisputed fact that, "[d]uring the interview process, Ms. Hernandez did not advise the interview panel that she had previously complained about discrimination

Regarding plaintiff's claim that the County retaliated against her by deeming her ineligible for reinstatement, the magistrate also finds that plaintiff fails to dispute the lack of a causal connection. *Id.* at 14.

Plaintiff argues that it can be inferred that the County's conduct was caused by plaintiff's 2019 lawsuit. *See* Docket No. 107 at 3-4. Plaintiff argues that "[r]etaliation may be proven circumstantially, including through HR records and corporate memory," and points to evidence that allegedly raises an inference of discrimination. *See id.* (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 771 (10th Cir. 2013)).

First, plaintiff argues that the Court can infer that the County's 2019 and 2022 reinstatement decisions were retaliatory acts based on certain evidence. *See id.* Specifically, plaintiff contends that the 2018 "December 7 certified letter" from the County "threatening medical termination" raises an inference of retaliation. *Id.* at 4. Plaintiff also claims her 2018 email to "Union President Josette Jarmillo" stating that "supervisors were retaliating by reducing her production and blocking her access to HR" shows that retaliation can be inferred. *Id.*

---

while employed with the County." Docket No. 53 at 3, ¶ 10. The County also asserts that, "[w]hile the interview panel was aware that she had previously worked for the County, the panel was not aware of any disability or disability-related complaint related to her prior employment." *Id.* at 4, ¶ 11. In response to this assertion, plaintiff states that she "disagrees with the statement of the fact" and that the "panel had imputed knowledge as employees representing their employer Pueblo County." Docket No. 69 at 4, ¶¶ 10-11. This is not responsive to the County's assertion and plaintiff cites no evidence in support of her purported denial. Therefore, the Court deems it to be admitted that the 2023 interview panel did not know that plaintiff had filed the 2019 lawsuit.

Second, regarding the portion of plaintiff's retaliation claim alleging that the County's 2023 hiring decision was a retaliatory act, plaintiff claims that the fact that the County put the "Legal Technician position 'on hold'" on August 1, 2023 only to "later repost[] it in August 27, 2023," therefore "requiring Plaintiff to reapply," means that retaliation can be inferred. *Id*. She also contends that plaintiff "never received confirmation of position opportunities for reconsideration after the 'hold' ended." *Id*.

The ADA prohibits retaliation based on a protected activity in Section 12203(a). 42 U.S.C. § 12203(a). Like her disability discrimination claim, plaintiff must make out a prima facie case of retaliation pursuant to the *McDonnell Douglas* framework. *See Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010). A necessary element of a prima facie retaliation case is that plaintiff show a causal connection between the protected activity and the adverse action. *See id.* Therefore, to survive summary judgment, plaintiff must raise a genuine issue of material fact that the County's refusal to reinstate or hire her was because of her 2019 discrimination case.

Regarding plaintiff's first argument, the Court agrees with the magistrate judge's recommendation that plaintiff fails to raise a genuine issue of material fact that there was a causal connection between the County's 2019 and 2022 reinstatement decisions and plaintiff's 2019 lawsuit. Plaintiff points to no evidence that raises a dispute that the County, in 2022, was unaware of plaintiff's 2019 lawsuit. There are no undisputed facts that show that the DHS Director in 2019 knew of plaintiff's federal discrimination lawsuit.

Plaintiff contends that causation can be shown through "corporate memory" that the County had of the 2019 lawsuit. *See* Docket No. 107 at 3-4 (citing *Schneider*, 717 F.3d at 771). However, *Schneider* is inapposite. The plaintiff in *Schneider* did not bring

13

retaliation claims under the ADA, but rather sued a police department and supervisors under 42 U.S.C. § 1983, alleging inadequate hiring, training, and supervision, among other claims.  *See Schneider*, 717 F.3d at 763.  Furthermore, the portion of *Schneider* that plaintiff relies on discusses the "deliberate indifference standard" that a plaintiff must satisfy to hold a municipality liable for the unconstitutional actions of its employees.  *See id*. at 770-71.  *Schneider* does not discuss a "corporate memory" theory that relieves plaintiff of the obligation to raise a genuine dispute of material fact that the County knew of her protected conduct in 2019 and 2022.  *See id*.

Moreover, the evidence that plaintiff cites cannot raise an inference that the County's reinstatement decisions were based upon her 2019 lawsuit.  The December 7, 2018 letter that allegedly "threaten[ed] medical termination" does not show retaliation.  *See* Docket No. 107 at 4.  The protected conduct at issue is plaintiff's filing the 2019 discrimination lawsuit.  *See* Docket No. 105 at 3.  Thus, a 2018 letter could not have been a retaliatory action taken in response to the 2019 lawsuit.  Similarly, the purported retaliation plaintiff complained of in her 2018 email to Ms. Jaramillo predated her 2019 lawsuit and thus could not have been a retaliatory act.  *See* Docket No. 107 at 4.

Turning to plaintiff's second argument, the Court agrees with the recommendation that plaintiff fails to dispute the lack of a causal connection between the plaintiff's federal discrimination lawsuit and the 2023 hiring panel's decision.[5]  *See*

---

[5] Plaintiff argues that the denial of reinstatement "constitutes an adverse employe action."  *See* Docket No. 107 at 7.  However, as the magistrate judge notes, it is not at issue whether plaintiff was subject to adverse employment decisions, but rather whether there is causation between the adverse employment decisions and plaintiff's protected activity.  *See* Docket No. 105 at 13.  Furthermore, plaintiff argues that the fact the County's DHS director emailed her on August 1, 2023, telling her that the Legal Technician Position was on hold, shows causation.  *See* Docket No. 107 at 7.  Again,

Docket No. 105 at 13.  Specifically, the Court agrees that plaintiff fails to raise a genuine dispute that the hiring panel was not aware of her 2019 federal lawsuit.  *See id.*  The fact that there were "irregular postings and delays" regarding the Legal Technician position does not dispute the fact that the hiring panel did not know of plaintiff's protected activity that plaintiff claims was the basis for the County's retaliation.  *See* Docket No. 107 at 4.[6]

Plaintiff fails to make out a prima facie case of retaliation.  Because plaintiff fails to raise a genuine dispute of material fact that the County's decision to not reinstate plaintiff's employment in 2022 or to hire her in 2023 was because of her 2019 discrimination lawsuit, the Court will overrule plaintiff's second objection and grant summary judgment for the County on claim two.

###    C.  Plaintiff's Third Objection

The magistrate judge recommends that summary judgment be granted for the Union Defendants on claim three, plaintiff's claim that the Union Defendants breached their duty of fair representation ("DFR").  *See* Docket No. 105 at 14-16.  The recommendation finds that plaintiff fails to demonstrate evidence of discrimination or

---

plaintiff does not explain how this email communicating the County's decision to put hiring on hold was connected to her federal discrimination suit.  *See id.*

[6] The magistrate judge finds that the lack of temporal proximity between plaintiff's 2019 discrimination lawsuit and the County's 2023 hiring decision further supports that plaintiff cannot meet her prima face burden to show causation.  *See* Docket No. 105 at 14 n.12.  Plaintiff argues that the magistrate judge "incorrectly held the four-year gap defeated causation."  Docket No. 107 at 6.  However, the magistrate judge did not find that "four-year gap defeated causation," but rather finds the temporal proximity is "also an issue for plaintiff" in demonstrating causation.  *See* Docket No. 105 at 14 n.12.  Even if plaintiff did show temporal causation, that does not change the fact that plaintiff fails to dispute the County's assertion that the hiring panel did not know about her 2019 federal lawsuit.

bad faith.  *See id.* at 16.  The recommendation also finds that the undisputed "evidence reasonably leads to only two alternate conclusions . . . : (a) the Union Defendants appropriately declined to represent Plaintiff because she was not covered by the CBA, or (b) the Union Defendants mistakenly declined to represent Plaintiff based on the erroneous belief she was not covered by the CBA."  *See id.*  The recommendation finds that "[n]either scenario constitutes a breach of the DFR."  *See id.*

Plaintiff objects, arguing that the Union Defendants "represented favored employees such as Josette Jaramillo, proving disparate treatment."  Docket No. 107 at 4.  Plaintiff notes that the Union Defendants have a duty of fair representation and that the CBA "contemplates union involvement in reinstatement."  *Id.*  She argues that the Union Defendants' "refus[al] to act" was "arbitrary and discriminatory."  *Id.* at 4, 6.

A labor organization, in the course of representing its members, has a duty of fair representation pursuant to the National Labor Relations Act.  *See United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 62 (1981); *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 563 (1990) ("The duty of fair representation is inferred from unions' exclusive authority under the National Labor Relations Act (NLRA), 49 Stat. 449, 29 U.S.C. § 159(a) (1982 ed.), to represent all employees in a bargaining unit.").  The duty of fair representation "requires a union 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'"  *Terry*, 494 U.S. at 563 (quoting *Vaca v. Sipes,* 386 U.S. 171, 177, (1967)).  Therefore, a "union also may not discriminate against an individual based on . . . disability."  *Henderson v. Int'l Union*, 263 F. Supp. 2d 1245, 1292 (D. Kan. 2003).

16

The Court agrees with the magistrate judge that, even assuming that the Union Defendants owed plaintiff a duty of fair representation and knew that she had a disability, plaintiff "does not present any evidence that this purported knowledge played a role" in the Union Defendants' representation decision. *See* Docket No. 105 at 15. Plaintiff merely speculates that defendants declined to represent her during her reinstatement efforts because she had a disability and cites no evidence in support of this proposition. Therefore, the Court finds that plaintiff fails to meet her burden of making out a prima facie case of breach of the duty of fair representation.

Plaintiff argues that the Union Defendants' representation of Ms. Jaramillo, and not plaintiff, shows that the Union Defendants discriminated on the basis of plaintiff's disability. *See* Docket No. 107 at 4-5. The Court agrees with the magistrate judge that Ms. Jaramillo and plaintiff were not similarly situated. *See* Docket No. 105 at 15-16. Ms. Jaramillo was an active employee at the time she sought the Union's representation in challenging her termination, while plaintiff was not. *See id*. at 16. Also, Ms. Jaramillo challenged her termination under the CBA's disciplinary process, rather than through the CBA's process for reinstatement. *See id*. Finally, Ms. Jaramillo sought representation shortly after her termination, while plaintiff sought representation almost four years after the County made its reinstatement decision. *See id*. Thus, plaintiff fails to raise a genuine issue of material fact of discrimination through the Union Defendants' representation of Ms. Jaramillo.

Furthermore, the Court agrees with the magistrate judge's finding that the fact the Union Defendants took a more aggressive approach regarding Ms. Jaramillo's grievance, without more, does not demonstrate a DFR violation. *See id*. Plaintiff does

not respond to this argument. Plaintiff's argument that the "CBA contemplates union involvement in reinstatement," *see* Docket No. 107 at 4, ignores the magistrate judge's finding that, even if plaintiff was covered by the CBA and the Union Defendants "mistakenly declined to represent Plaintiff based on the erroneous belief she was not covered by the CBA," this does not constitute a breach of the duty of fair representation. *See id.* at 16.

The Court finds that plaintiff fails to raise a genuine issue of material fact that the Union Defendants refused representation due to her disability and therefore fails to meet her prima facie burden. Accordingly, the Court will overrule plaintiff's third objection and grant summary judgment on claim three for the Union Defendants.[7]

### D. Plaintiff's Fourth Objection

Plaintiff makes an objection directed at the magistrate judge's recommendation in its entirety, rather than at specific findings, namely that the magistrate judge "improperly weighed the credibility of witnesses." *See* Docket No. 107 at 5. Plaintiff also argues

---

[7] Plaintiff also appears to argue that the Union Defendants discriminated against her by failing to take action on plaintiff's behalf when plaintiff complained that the County was "retaliating by reducing [plaintiff's] production and blocking her access to HR." *See* Docket No. 107 at 4. As an initial matter, the magistrate judge construes plaintiff's claim for breach of the duty of fair representation to allege that this breach occurred when the Union Defendants failed to advocate for plaintiff's reinstatement. *See* Docket No. 105 at 14 ("Plaintiff claims the Union Defendants discriminated and retaliated against her by refusing to assist her with reinstatement, and in doing so, breached their duty of fair representation."). Plaintiff did not object to this finding, and the Court does not find that plaintiff adequately alleged any other claim against the Union Defendants in her complaint. *See* Docket No. 80. Even if this claim were adequately alleged in plaintiff's complaint, the Court would grant summary judgment on this claim as well for the Union Defendants. Plaintiff points to no evidence suggesting that the Union Defendants' decision to not intervene was because of plaintiff's disability, or because of any discrimination complaints that plaintiff may have filed.

that the "Recommendation failed to apply the principle that pro se filings must be construed liberally." *See id.* at 7.

The Court will overrule plaintiff's objections. An objection is "proper" if it is both timely and specific. *One Parcel*, 73 F.3d at 1059. A specific objection "enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *Id*. (citation omitted). Plaintiff does not explain how the magistrate judge "improperly weighed the credibility of witnesses." *See* Docket No. 107 at 5. Due to its lack of specificity, the Court will deny that objection. However, in any event, the Court finds no instances where the magistrate judge weighed the credibility of witnesses. Furthermore, the Court finds that the magistrate judge afforded plaintiff's briefing a liberal construction. *See* Docket No. 105 at 9 ("The Court is mindful that plaintiff proceeds pro se and thus affords her papers and filings a liberal construction."). Plaintiff does not provide examples of how the magistrate judge failed to give her filings a liberal reading. Instead, plaintiff merely argues that her "filings included exhibits, transcripts, and recordings that must be viewed in her favor at summary judgment." *See* Docket No. 107 at 7. However, as the magistrate judge notes, giving a liberal construction to filings "does not require the Court to make unreasonable inferences in favor of the nonmoving party." *See* Docket No. 105 at 8. Rather, on summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *See Bausman*, 252 F.3d at 1115. The Court finds that the magistrate judge properly viewed the record in the light most favorable to plaintiff and found that defendants identified "a lack of evidence" on "an essential element" of each claim. *See id*.

Accordingly, the Court will overrule plaintiff's fourth objection.

### E. **Plaintiff's Fifth Objection**

Plaintiff objects to the recommendation's finding that, while "Plaintiff contends the interview panel told her there were three total Legal Technicians being hired during the 2023 cycle," she provides "no evidence to support this statement other than her own declaration." *See* Docket No. 107 at 4 n.5. The magistrate judge notes that the "declarations of the interview panelists indicate that they were only hiring for a single position." *See id.*

The fact that there were three positions available at the time that plaintiff interviewed is not relevant to plaintiff's claim for discrimination or retaliation.[8] Plaintiff

---

[8] The Court deems it to be undisputed that the 2023 hiring panel told plaintiff that there were three Legal Technician positions available. Plaintiff's contention regarding the number of Legal Technician positions available was in response to the County's assertion of fact that the "panelists ultimately recommended Ms. Brown for hire based on her superior background and skills, not because of any actual or perceived disability of Ms. Hernandez (of which they were unaware)." *See* Docket No. 53 at 5, ¶ 19; Docket No. 69 at 5, ¶ 19. Because plaintiff's assertion regarding the number of positions available is not responsive to the County's assertion, it is undisputed that Ms. Brown was hired due to her superior credentials and not plaintiff's disability. However, plaintiff also asserts as an additional statement of fact that the hiring panel "stated that there were three positions open" and cites her declaration in support in her responses to the County's motion for summary judgment and the Union Defendants' motion for summary judgment. Docket No. 69 at 14, ¶ 60; Docket No. 96 at 22, ¶ 89. The County denies this fact by stating "[o]ther than her declaration, Ms. Hernandez supplies no evidence that three positions were open. She supplies no evidence that more than one candidate was *hired.*" Docket No. 77 at 3, ¶ 60. While plaintiff's response to the County's motion only relies on her declaration to support her assertion, plaintiff attaches an audio recording, that is allegedly from the July 31, 2023 interview, to her response to the Union Defendants' motion. *See* Docket No. 96 at 22, ¶ 89 (citing Docket No. 97). In the recording, the 2023 hiring panel tells plaintiff that there are three positions available. *See* Docket No. 97 at 03:28-03:40. The Union Defendants failed to dispute this assertion because they did not respond to plaintiff's additional statement of facts. *See* Docket No. 105 at 3, n.3.

does not explain why this fact is material. *See id.* at 8. As explained regarding plaintiff's discrimination and retaliation claims, it is undisputed that the 2023 hiring panel did not know plaintiff was disabled or that she had filed the 2019 lawsuit. Moreover, it is undisputed that Ms. Brown had a valid Paralegal's Certification, which was a preferred qualification, while plaintiff did not. Docket No. 53 at 4, ¶¶ 14, 16. Ms. Brown had 25 years of experience as a paralegal, including in the area of family law, while plaintiff had been working for several years outside the field of child custody and enforcement work. *Id.*, ¶¶ 15, 17.

Accordingly, the Court will overrule plaintiff's fifth objection.

### F.  Plaintiff's Sixth Objection

Plaintiff argues that, in connection to claims one and two, the magistrate judge did not consider evidence that the County's reasons for denying reinstatement and not hiring plaintiff were pretextual. *See* Docket No. 107 at 5-6. The recommendation finds that plaintiff fails to show a prima facie case of discrimination and retaliation. *See* Docket No. 105 at 12, 14. Because plaintiff has not met her prima facie burden, the burden does not shift to the County to show that it had a legitimate, nondiscriminatory reason to deny reinstatement and not hire plaintiff. *See Ames,* 605 U.S. at 308-09. Therefore, claims one and two do not survive summary judgment, and the fact that plaintiff purports to have evidence of pretext is irrelevant given that she fails to establish a prima facie case of discrimination and retaliation against the County.

Accordingly, the Court will overrule plaintiff's sixth objection.

### V.  CONCLUSION

Therefore, it is

**ORDERED** that the Recommendation of the United States Magistrate Judge [Docket No. 105] is **ACCEPTED.**  It is further

**ORDERED** that Plaintiff's Objections to the Magistrate Judge's Recommendation [Docket No. 107] is **OVERRULED**.  It is further

**ORDERED** that Pueblo County's Motion for Summary Judgment [Docket No. 53] is **GRANTED**.  It is further

**ORDERED** that Defendants AFSCME Council 18 and AFSCME Local 1335 Motion for Summary Judgment [Docket No. 55] is **GRANTED**.  It is further

**ORDERED** that judgment on claims one and two is entered in favor of defendant the County of Pueblo.  It is further

**ORDERED** that judgment on claim three is entered in favor of defendants AFSCME Council 18 and AFSCME Local 1335.  It is further

**ORDERED** that this case is closed.

DATED September 29, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge